IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDY ORTIZ, | : | |
|     *Plaintiff*, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-CV-3813 |
| | : | |
| P.I.C.C., *et al.*, | : | |
|     *Defendants*. | : | |

**MEMORANDUM**

**PAPPERT, J.**                                                                                          **October 18, 2022**

In his Second Amended Complaint, *pro se* Plaintiff Andy Ortiz, a convicted prisoner incarcerated at SCI Camp Hill, asserts claims pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights[1]. (ECF No. 18.) For the following reasons, the Court will permit Ortiz to proceed with his retaliation claims against Defendants Gibson, Johnson, Bailey, Young, Martin, Heads, Crawford, and Spellman, and will dismiss the remainder of the SAC with prejudice for failure to state a claim under § 1915(e)(2)(B)(ii). Ortiz will be granted the option of proceeding on his retaliation claim against the above named Defendants or filing a Third Amended Complaint to correct the deficiencies, described below, in his current pleading.

---

[1] Ortiz checked boxes indicating that he was a pretrial detainee, a civilly committed detainee, and a convicted and sentenced state prisoner. (ECF No. 18 at 9.) The publicly available docket reflects that on March 5, 2021, Ortiz pled guilty to rape of a child and numerous related offenses. *Commonwealth v. Ortiz*, No. CP-51-CR-1258-2020 (C.P. Phila.) On June 3, 2022, the state court denied Ortiz's motion to withdraw his guilty plea and Ortiz was sentenced to a period of incarceration. (*Id.*) At the time of the events giving rise to his claims, Ortiz was a pretrial detainee.

1

I[2]

Ortiz's Amended Complaint[3] named the following Defendants: Philadelphia Industrial Correctional Center ("PICC"), Correctional Officer ("CO") Gibson, CO Bailey, CO Johnson, Warden Farrell, Major Martin, Sergeant Heads, Sergeant Crawford, Lieutenant Spellman, CO E. Young, Blanche Carney, CO Morris, CO Clark, and CO Robbinson. Upon initial screening, the Court granted Ortiz leave to proceed *in forma pauperis*, dismissed his claims against PICC with prejudice, and dismissed the remainder of the Amended Complaint without prejudice for failure to state a claim.[4] Ortiz was granted leave to file a second amended complaint, *Ortiz*, 2022 WL 1567794, at *1, which is now ripe for screening.

Ortiz completed the Court's form prisoner civil rights complaint. He asserts claims against the following Defendants: Gibson, Bailey, Johnson, E. Young, Farrell, Martin, Heads, Crawford, Spellman, Carney, Morris, Clark, CO C.L. Jones, Robbinson, CO M. Cooper, Lt. G. Malloy, Deputy Warden E. Cruz, Major R. Rose, and Sergeant Granville. (SAC at 2-8.) Ortiz alleges that the events giving rise to his claims occurred

---

[2] The allegations are taken from the SAC (ECF No. 18). The Court adopts the pagination assigned by the CM/ECF docketing system.

[3] Ortiz's original filing consisted of a two-page letter that the Court determined did not satisfy the pleading requirements of the applicable Federal Rules of Civil Procedure or civil rights statutes. The Court granted Ortiz leave to file an Amended Complaint, which became the subject of the Court's initial screening. *See Ortiz v. P.I.C.C.*, No. 21-3813, 2022 WL 1567794, at *1 (E.D. Pa. May 18, 2022).

[4] The Court construed Ortiz's Amended Complaint as asserting a claim based on failure to protect. *Ortiz*, 2022 WL 1567794, at *3. The Court dismissed the claim as not plausible because Ortiz did not allege what he told each Defendant about alleged threats to his safety, when he told them in relation to the alleged attacks, or how the Defendants responded to the information. *Id.* As a result, Ortiz did not plausibly allege that the Defendants were deliberately indifferent to the threat to Ortiz's personal safety.

at Curran Fromhold Correctional Facility ("CFCF") on D1-4 and at PICC on C-Unit and K-Unit. (*Id.* at 9-10.) Ortiz alleges that on May 20, 2020, on K-Unit at PICC, several unnamed inmates assaulted Ortiz and his cellmate. Ortiz and his cellmate were under protective custody at the time, but were sent out for exercise and activities at the same time as general population inmates. (*Id.* at 10.) Ortiz also alleges that unnamed general population inmates went to his cell and threatened him and his cellmate. (*Id.*) Ortiz alleges that while he was housed on C-Unit at PICC in 2021, also under protective custody, mental health inmates from the general population were housed in the same unit. (*Id.*) He alleges that unnamed inmates threw dirty fluids and feces at his cell door and that one inmate threatened to stab him. (*Id.*)

Ortiz claims that he filed five grievances over the attacks, but the prison did not respond. (*Id.* at 12.) He notes that he wrote grievances to Defendants Cruz and Rose because he did not believe his grievances were being transferred to the proper authorities. (*Id.* at 13.)

Ortiz also included a handwritten supplement to his form SAC. In it, he alleges that on May 20, 2020, he informed Farrell, Martin, Heads, Crawford, Spellman, Gibson, Young, Johnson, Bailey, and Carney personally and through the grievance system, that during the 7 am -3 pm and 3 pm -11pm shifts, he and his cellmate were assaulted in their cell by general population inmates housed on K-Unit, who were able to both enter and leave his cell without attracting the notice of the correctional officers on duty. (*Id.* at 17.) Ortiz alleges that Gibson, Johnson, Bailey, and Young were on duty during those shifts and failed to protect him. (*Id.*) He also alleges that Martin, Heads,

Crawford and Spellman were the responsible supervisors during those shifts, and that Farrell was the Warden at PICC at that time. (*Id.*)

Ortiz claims that he told the correctional officers on duty during those shifts what happened, but that the officers ignored him and walked away. (*Id.* at 18.) He also claims that he advised Farrell and Carney that he was in protective custody and, as such, should not be housed with general population inmates and that he felt unsafe in his then current housing. He asserts that as a result of exercising his First Amendment rights, he experienced retaliation by Gibson, Johnson, Bailey, and Young, who are alleged to have withheld Ortiz's commissary bag and denied him access to outdoor recreational time. (*Id.*)

Ortiz alleges he told Martin, Heads, Crawford, and Spellman that he was attacked in his cell and was told that if he did not keep his mouth shut, he would be written up for fighting and sent to the Restricted Housing Unit ("RHU"). (*Id.* at 19.) He notes that as a result, he did not further report the incident. (*Id.*) He claims that Farrell and Carney were notified and failed to move him to protective custody in a timely fashion and that Farrell moved him to C-Unit approximately two months after the incident described. (*Id.*)

Ortiz alleges that on or about June 6, 2021, he was transferred from CFCF to PICC, and upon arrival was placed at his request in protective custody, where he observed general population inmates housed with protective custody inmates. (*Id.*) He claims that on June 10, 2021, while on K-Unit at PICC, a general population inmate

4

called him names, used profanity, and threw urine and feces under his door.[5]  (*Id.*)

Ortiz alleges he informed Morris, Clark, and Jackson about this incident, and Morris told Ortiz "This is a jail not a 5-star hotel," and walked away.  (*Id.* at 20.)  Clark is alleged to have asked Ortiz, "What do you want me to do?" and walked away.  Jackson is alleged to have arranged a transfer to CFCF.  (*Id.*)

Ortiz claims that two days after he arrived at CFCF, he was assaulted first in the shower and then in his cell.  (*Id.* at 21.)  He says he told Robbinson and Jones, who he alleges were on duty at the time the incident occurred.  Cooper cursed at and ignored him, while Rose and Cruz told Ortiz that they do not handle such issues.  Ortiz alleges that he filed a grievance in early 2021 regarding his safety, and that he was told he would be protected, but was not.  (*Id.*)

Ortiz alleges that he suffered lumps on his face, leg and back injuries, and emotional distress.  (*Id.* at 10.)  He asserts that his First, Eighth and Fourteenth Amendment rights have been violated, in that he has experienced retaliation, and prison personnel have failed to protect him.[6]  (*Id.* at 3.)  He seeks monetary damages.[7]

---

[5] It is unclear whether this incident is the same as the one described above as occurring in 2021.

[6] Ortiz also references "municipal liability [and] policies or customs." (SAC at 3.)  The SAC, however, includes no factual allegations describing municipal liability, policies or customs, and any related claims will be dismissed without further discussion.  Similarly, Ortiz claims that he was denied medical care (*id.* at 10), but there are no factual allegations in the SAC describing any instances in which medical care was requested or denied.  This conclusory allegation, too, will also be dismissed.

[7] Ortiz also wants the Court to order the Department of Corrections to "z-code" him so that he will be housed in a single cell now that he is in the custody of the DOC. (SAC at 21-22.)  Ortiz does not explain how this form of relief follows from the allegations in his SAC against City employees based on conduct that occurred in Philadelphia prisons and is not appropriate in this context.

II

The Court previously granted Ortiz leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the SAC if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Ortiz is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

III

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, "[a] defendant in a civil

rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

A

As with his Amended Complaint, the gravamen of the claims included in Ortiz's SAC is that personnel at CFCF and PICC failed to protect him. He alleges that in or about May 20, 2020, on K-Unit at PICC, several unnamed inmates assaulted him. (SAC at 10.) Ortiz says he told Farrell, Martin, Heads, Crawford, Spellman, Gibson, Young, Johnson, Bailey, and Carney personally and through the grievance system, that during the 7 am - 3 pm and 3 pm -11pm shifts, he was assaulted in his cell by general population inmates housed on K-Unit. (*Id.* at 17.) Ortiz claims Gibson, Johnson, Bailey, and Young were on duty during those shifts and failed to protect him. (*Id.*) Ortiz says he advised all of the correctional officers who were on duty during those shifts what happened, but that the correctional officers ignored him and walked away. (*Id.* at 18.)

He also alleges that on June 10, 2021, while on K-Unit at PICC, a general population inmate called him names, used profanity, threw urine and feces under his door, and threatened to stab him. (*Id.* at 10, 19.) Ortiz claims he informed Morris, Clark, and Jackson about this incident, and Morris told Ortiz, "This is a jail not a 5-star hotel," and walked away. (*Id.* at 20.) Defendant Clark is alleged to have asked Ortiz, "What do you want me to do?" and walked away.

Ortiz also describes an incident that occurred at CFCF, during which he was assaulted first in the shower and then in his cell. (*Id.* at 21.) He claims that he informed Robbinson and Jones, who he alleges were on duty at the time the incident

7

occurred, but does not detail their responses. He alleges that Cooper cursed at him and ignored him. Rose and Cruz are alleged to have told Ortiz they do not handle such issues. (*Id.*) For the following reasons, Ortiz has not stated a plausible failure to protect claim against any of the named Defendants and this claim will be dismissed.

The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *Hubbard*, 399 F.3d at 166. To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

In general, to allege a sufficiently culpable state of mind a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District

Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

In the context of suits against prison officials for failure to protect an inmate from harm caused by other inmates, the United States Court of Appeals for the Third Circuit has stated that where a prison official is deliberately indifferent to a pervasive risk of harm to an inmate, an inmate may obtain relief in a § 1983 action. *Young v. Quinlan*, 960 F.2d 351, 361 (1992) (superseded by statute on other grounds as stated in *Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000). To be deliberately indifferent, a prison official must both "'know[ ] of and disregard an excessive risk to inmate health or safety.'" *Carter v. Lawler*, 446 F. App'x 420, 423 (3d Cir. 2011) (quoting *Farmer*, 511 U.S. at 834) (*per curiam*) (affirming dismissal of failure to protect claim where "[t]here is no suggestion that the Defendants had any prior warning or knowledge that Carter might be involved in an altercation with Nguyen, or that they were aware that Carter's cell door was unlocked"); *Bonner v. Sipple*, 392 F.Supp.3d 594, 599 (E.D. Pa. 2019) (failure to protect claim dismissed as not plausible where litigant did not allege how attack on him came about, what the defendant was in a position to see or do, or what the defendant did or did not do in connection with the attack to "allow" it to occur).

Here, Ortiz alleges that he "informed each Defendant" about the above-described incidents, but only after they occurred. He does not allege that the named Defendants were aware of the risk of ongoing harm to Ortiz, or were otherwise in a position to prevent the incidents alleged. Ortiz does not allege what any of the Defendants did or did not do to allow the incidents to occur. Ortiz has not stated a plausible claim that

9

the Defendants failed to protect him from harm. Although Ortiz has already been permitted to amend this claim, he will be granted a further opportunity to amend. If he chooses to further amend, Ortiz is directed to clarify his allegations so the Court knows when and where each incident occurred, and precisely what information was provided to each Defendant, when it was provided, and what action, if any, the Defendant took.

B

Construing Ortiz's pleading liberally, the Court understands him to be asserting claims against several of the Defendants in their supervisory capacity. Ortiz alleges that at the time of the May 20, 2020 incident, Martin, Heads, Crawford and Spellman were the responsible supervisors, and Farrell was the Warden at PICC. (SAC at 17.) He alleges that he informed these supervisors about the incidents giving rise to his claims and they ignored him or otherwise did not provide relief. (*Id.* at 18.) He also notes that Carney was the Commissioner of the Department of Prisons at the relevant time. (*Id.*) Finally, he alleges that he filed at least five grievances, to which the prison did not respond, and that he forwarded grievances to Cruz and Rose and suggests that he did not receive a response. (*Id.* at 12, 13.) He also contends he gave grievances to Granville and Malloy after the CFCF incident, but did not receive the requested safe housing. (*Id.* at 21.) These conclusory and undeveloped allegations do not state a plausible supervisory liability claim against these Defendants and the claims against them will be dismissed.

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575

10

U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Additionally, participation in the grievance process does not, without more, establish involvement in the underlying constitutional violation. *See Rode,* 845 F.2d at 1207 (participation in grievance process not enough to show personal involvement in alleged violation).

As before, Ortiz does not reference any policy of which any of the named Defendants was aware that created a risk of harm, or resulted in the injuries Ortiz allegedly suffered. He does not say the Defendants were aware of, directed, or participated in the conduct giving rise to his claims. His suggestion that several

11

Defendants were aware of the danger to him as a result of the grievances he filed does not state a plausible claim.  In short, Ortiz has not stated a plausible supervisory liability claims against these Defendants and these claims will be dismissed with prejudice, as amendment would not cure their deficiencies.

C

In his SAC, Ortiz again alleges that he experienced retaliation as a result of exercising his First Amendment rights.  The Court understands Ortiz to be claiming that, as a result of reporting to their supervisors that they failed to protect him from the May 20, 2020 incident, Gibson, Johnson, Bailey, and Young retaliated against Ortiz by withholding his commissary bag and denying him access to outdoor recreational time.  (*Id.* at 18.)  Ortiz also alleges that he informed supervisors Martin, Heads, Crawford and Spellman that he was attacked in his cell on May 20, 2022, and was told that if he did not keep his mouth shut, he would be written up for fighting and sent to the Restricted Housing Unit ("RHU").  (*Id.* at 19.)  He notes that as a result, he did not further report the incident.  (*Id.*)

In order to state a plausible First Amendment retaliation claim, a prisoner must allege that:  (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).  A prisoner's filing of a grievance is constitutionally protected conduct.  *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d

Cir. 2006) (citing *Mitchell*, 318 F.3d at 530; *Davis v. Goord*, 320 F.3d 346, 35-53 (2d Cir. 2003)).

Ortiz has alleged a plausible claim for retaliation against Gibson, Johnson, Bailey, Young, Martin, Heads, Crawford, and Spellman and this claim will be served for a responsive pleading.

IV

For the foregoing reasons, Ortiz's First Amendment retaliation claim against Gibson, Johnson, Bailey, Young, Martin, Heads, Crawford, and Spellman will be served for a responsive pleading. The remainder of the SAC will be dismissed without prejudice for failure to state a claim under § 1915(e)(2)(B)(ii). Ortiz will be granted the option of proceeding on his retaliation claim against the above named Defendants or filing a Third Amended Complaint to correct the deficiencies in his SAC.

An Order follows, which shall be docketed separately.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**